IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SAMUEL MCINTOSH,                )
                                )
            Plaintiff,           )
                                )
      v.                         )      1:07CV120
                                )
LINDA M. BISSONNETT,            )
                                )
            Defendant.           )

## MEMORANDUM OPINION, ORDER AND RECOMMENDATION
## OF MAGISTRATE JUDGE ELIASON

Plaintiff, a former prisoner of the State of North Carolina, seeks relief pursuant to 42 U.S.C. § 1983. Plaintiff claims in his complaint that he received inadequate medical treatment from Defendant while housed at the Dan River Prison Work Farm. Defendant is a medical doctor who treated Plaintiff at the Work Farm during late 2006 and early 2007. Defendant has moved for summary judgment (Docket No. 13), Plaintiff has responded[1] (Docket No. 18), and the motion for summary judgment is now before the Court for a decision.

### Facts

Plaintiff's only submission regarding the facts is his complaint and a set of grievances attached to his response. As for

---

[1] Plaintiff filed a motion to extend time to file a response and then a response. The motion states that he seeks to hire an attorney and/or submit a further response. He may even be seeking more time to do so. Nearly three months have passed since the motion for summary judgment was filed and two months have passed since the response was filed. No attorney has entered an appearance and no further response has been submitted. Also, as will be discussed, the medical records before the Court dictate a very clear result in the case. Delaying a decision any longer is not appropriate.

Plaintiff's complaint, it is difficult to understand at times, but it begins by stating that Plaintiff was transferred to the Work Farm on November 7, 2006. (Docket No. 2, ¶ 3.) It alleges that he was disabled following back surgery, during which a disc was removed. He also suffers from Hepatitis C. (Id.) Plaintiff was given a job working in the kitchen at the Work Farm, but began to suffer leg and back pain. He states that he saw Defendant for those problems, was denied medication that he had been taking for twenty years, and was given another medication that caused pain and "a bleeding infection" in his stomach. (Id.) He identifies the medication in question as ibuprofen and attaches drug warnings for that drug to his complaint. Additionally, Plaintiff asserts that he asked to see other doctors, but that these requests were denied. (Id.) He may also be complaining about the fact that he was assigned to the job in the kitchen despite his medical conditions.

Defendant presents a much more complete record of Plaintiff's medical treatment at the Work Farm. She herself saw Plaintiff on several occasions and reviewed his charts and test results on other occasions. He was also seen by different medical staff at the Work Farm at other times. The specifics of his medical treatment, as supported by Defendant's affidavit and Plaintiff's medical records, are as follows.

On October 23, 2006, Plaintiff was seen by Frank Stamper, P.A., at Piedmont Correctional Institution. Stamper gave him a starter pack of Seroquel 100mg until he could receive a mental health evaluation. Plaintiff was not receiving pain medication at

the time of his transfer to Piedmont Correctional. (Docket No. 15, ¶ 5 and Ex. A.)

On November 1, 2006, Plaintiff did receive a mental evaluation. The Seroquel was discontinued. (Id., ¶ 6 and Ex. A.) A few days later, on November 7, 2006, Plaintiff was transferred to the Work Farm. Defendant saw Plaintiff on November 9, 2006 to review his records and conduct an examination. Plaintiff told her at that time that he needed medication to sleep, that he had taken Seroquel "'for a long time,'" that he had taken other drugs in the past, and that he needed neck surgery. (Id., ¶ 7 and Ex. C.) Defendant examined Plaintiff and determined that Plaintiff did not need neck surgery. She did prescribe Motrin 800mg to be taken three times a day, order that Plaintiff be given a walking cane, and set certain limitations on his physical activities. She also informed Plaintiff that only the psychiatry unit could treat his insomnia and urged him to submit a sick call request to that unit. (Id.)

On November 20, 2006, Plaintiff was seen by a nurse for passing blood during bowel movements and having back and leg pain. He told the nurse that he had a history of hemorrhoids and that he recently had diarrhea, which had gotten better. He reported pain in his right neck, shoulder, arm, and leg. The nurse referred him to Defendant who saw him on November 22, 2006. Plaintiff complained of back pain, as well as bright red blood when wiping his rectum. The bleeding had resolved itself prior to that date.

Defendant prescribed Robaxin 500mg, a muscle relaxant, for Plaintiff's back. (Id., ¶¶ 8, 9 and Ex. D.)

On December 13, 2006, Plaintiff submitted a sick call asking to have his Robaxin changed to Flexeril. He also told the triage nurse that he had abdominal pain and more hemorrhoids and bleeding. She gave him Maalox and referred him to Defendant. Defendant then saw Plaintiff the next day. He complained of stomach pain and nausea and requested Flexeril. Defendant swapped the Robaxin for Flexeril and also prescribed Zantac 150mg for Plaintiff's stomach, Gaviscon 30cc for his indigestion, and Inderal 10mg. Additionally, she noted that Plaintiff was an ex-alcoholic with Hepatitis C. She then ordered blood, liver, and other tests. (Id., ¶¶ 10, 11 and Ex. E.) On January 4, 2007, after reviewing the results of Plaintiff's tests, she ordered further liver tests. A week later, she again ordered the tests and prescribed Phenergan 25mg to treat Plaintiff's nausea. On January 25, 2007, Defendant reviewed the results of Plaintiff's further test results. She determined, based on all of his tests, that he did not meet the North Carolina Department of Correction's criteria for antiviral treatment of Hepatitis C. (Id. ¶¶ 10-16 and Ex. F-H.)

On January 30, 2007, Plaintiff was seen by a triage nurse for pain in his lower back and legs. He reported that he had stopped taking the Zantac because it did not help his stomach problems. He was given an analgesic balm for his pain and Almag tablets for his indigestion. Plaintiff's sick call form asked that he be allowed to see a neurologist, but the records do not show that he informed

-4-

Case 1:07-cv-00120-WO-RAE   Document 19   Filed 07/30/08   Page 4 of 11

the triage nurse of this desire. He was referred to a unit physician, but not to Defendant. (Id., ¶ 17 and Ex. I.)

Defendant did not personally see Plaintiff again for treatment. However, on February 1, 2007, she reviewed his charts, noted that he was not eligible for more Flexeril, renewed the Zantac and Gaviscon prescription, and prescribed Atarax 50mg for itching and/or anxiety. (Id., ¶ 18 and Ex. J.) She also reviewed his records on February 20, 2007 and renewed Plaintiff's Inderal prescription to treat esophageal problems related to his Hepatitis C. This concluded her treatment of Plaintiff. (Id., ¶ 19 and J.)

## Discussion

Before discussing the full merits of Plaintiff's claims, the Court first notes that this lawsuit appears to be moot. In his complaint, Plaintiff seeks the following relief: (1) removal from the Work Farm, (2) examination by another doctor, (3) proper medical testing, (4) submission of the test results to the Court, and (5) time to formulate other relief based on any damage done to him (apparently to be revealed by the requested tests). Plaintiff was released from prison in March of 2007. (Docket No. 14 at 7 n.2.) Therefore, he is no longer at the Work Farm and his immediate medical care and testing is not the concern of the North Carolina Department of Correction at this time. This would seem to moot all of Plaintiff's requested relief.

It is possible to construe Plaintiff's complaint to put forth a theory that some sort of permanent damage was done during his time at the Work Farm and that testing is needed to determine and

-5-

treat this damage. However, Plaintiff has provided absolutely no actual evidence to support such a claim. It would be based purely on conjecture and would fail for that reason. Overall, it appears that this case is moot given the types of relief requested and it could be dismissed for that reason alone.

Plaintiff's lawsuit also fails on the merits even if it is not moot. In order for Plaintiff to succeed in this lawsuit alleging improper medical care, he must show that Defendant was deliberately indifferent to a serious medical need. Mere negligence or malpractice is not enough. Estelle v. Gamble, 429 U.S. 97 (1976)(convict); Johnson v. Quinones, 145 F.3d 164, 166 (4th Cir. 1998); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990)(pretrial detainee).

As stated by the Fourth Circuit in Johnson, 145 F.3d at 167:

> To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison officials acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 298, 111 S.Ct. at 2324; see Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir.1997); Williams, 77 F.3d at 761; Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).
>
> With regard to inadequate medical attention, the objective component is satisfied by a serious medical condition. . . .
>
> The subjective component is satisfied by showing deliberate indifference by prison officials. . . . Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979; see Amos, 126 F.3d at 610 (stating that "prison officials [must] know of and disregard an objectively

-6-

serious condition, medical need, or risk of harm"). A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844, 114 S.Ct. at 1982; see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997)(holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm).

To meet this standard, Plaintiff must show that the treatment is grossly incompetent or inadequate to the extent that it shocks the conscience and seems fundamentally unfair. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Deliberate indifference is manifested by actual intent or reckless disregard of substantial risks of danger but not mere acts of negligence. Id.

In evaluating a medical care case, the Court may rely on medical records to assess whether an evidentiary hearing is required, Blanks v. Cunningham, 409 F.2d 220 (4th Cir. 1969), and to determine whether the injury is in fact serious, West v. Keve, 571 F.2d 158, 162 (3d Cir. 1978). The Court may rely on the affidavits of medical personnel and the medical records to determine whether a defendant's efforts were reasonable. Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd without opinion, 676 F.2d 690 (4th Cir. 1982). When the affidavits show that Plaintiff was under constant medical supervision, he likely is not entitled to relief since medical judgments are not normally subject to review. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975). The Court may look at intake examinations, complaints made, treatment given and its timeliness, physicians' evaluations, and

subsequent evaluations. <u>Gray v. Farley</u>, 13 F.3d 142, 146 (4th Cir. 1993)(pretrial).

Here, Plaintiff undeniably suffered from medical difficulties. However, his medical records reveal that, on numerous occasions, he was treated by nurses and by Defendant. The result was that he was under almost constant medical supervision during his stay at the Work Farm. Defendant herself prescribed a number of medications, placed physical restrictions on Plaintiff's activities, and ordered tests, all while attempting to address Plaintiff's multiple medical problems. She also reviewed his charts and test results and made medication changes as she deemed necessary. She never simply ignored Plaintiff.

A look at Plaintiff's specific complaints about his treatment reveals the inadequacy of his claims in light of this record. Plaintiff first complains about being sent to the Work Farm and given a job even though he had medical problems. Nothing shows that Defendant played any part in the decision to house Plaintiff at the Work Farm or assign him to the kitchen job. Defendant did perform a physical examination of Plaintiff during which she noted his physical abilities and limitations, but Plaintiff has produced no evidence to call these determinations into question. In fact, he does not even challenge any specific findings in the evaluation.

Plaintiff next states that he was denied medication that he had been taking for almost twenty years. He does not clearly identify this medication, but it appears he may be speaking of Flexeril or Seroquel. The record before the Court shows quite

-8-

clearly that Defendant did not immediately prescribe Flexeril to Plaintiff, but instead attempted to treat his pain with Motrin and Robaxin. When these failed, she did then prescribe Flexeril to Defendant. In no way was she deliberately indifferent to his pain. As for Seroquel, Defendant advised Plaintiff to see the psychiatric unit about getting that or another medication to help him sleep. It is not clear whether or not he did so.

Plaintiff also alleges that the medication he was given, apparently the Motrin, caused intense pain and a "bleeding infection" in his stomach. Not only is this unsupported by his medical records, but they actually tend to show otherwise. The bleeding experienced by Plaintiff was caused by hemorrhoids and resolved itself. There is no sign of a stomach infection at all.

Plaintiff apparently attempts to rely on the ibuprofen drug warning sheet attached to his complaint to show that the Motrin[2] caused stomach bleeding. However, it does not aid his cause. It states only that a person with a history of stomach problems or bleeding ulcers should notify their doctor before taking ibuprofen. It does not list stomach or intestinal bleeding as a possible side-effect. Moreover, it is not competent evidence that such a drug was completely and unqualifiedly inappropriate at the time it was given. Overall, Plaintiff is without any evidence that the Motrin did, or even could, cause his bleeding.

---

[2]Motrin is a trademark for a form of ibuprofen. Dorland's Illustrated Medical Dictionary, 839 (26th ed. 1981).

The sheet supplied by Plaintiff merely states that Motrin can cause stomach pain, nausea, and diarrhea. While it is true that Plaintiff did suffer these symptoms, there is still no evidence that the Motrin affirmatively caused them in his case. More importantly, Defendant treated these symptoms with medication designed to alleviate them. To the extent Plaintiff possibly suffered side-effects from the Motrin, Defendant responded with treatment. She was not deliberately indifferent to his plight, and Plaintiff fails to submit any medical evidence to support his claim.

Finally, Plaintiff states that he asked to see another doctor on three or four occasions, but was not allowed to do so. Initially, it should be noted that the complaint never actually alleges that he communicated this request to Defendant, as opposed to some other person. Defendant states in her affidavit that he did not. Plaintiff has not responded with any contrary evidence. Also, a prisoner is not entitled to his preferred course of treatment. Price v. Dixon, 961 F. Supp. 894, 899 (E.D.N.C. 1997)(citing Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)). His claim that his rights were violated because he was not allowed to see another doctor fails.

Overall, Plaintiff's problems received responses from medical staff on a repeated basis. While he may have personally disagreed with the treatments he received, it is abundantly clear that neither Defendant nor any other medical staff at the Work Farm showed deliberate indifference to his medical problems. Again,

-10-

Plaintiff fails to submit any medical evidence to support his claim. His claims, at most, amount to no more than allegations of medical malpractice based solely on his own unqualified layman's opinion. This is not sufficient to proceed under § 1983. Defendant's motion for summary judgment should be granted.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to extend time (Docket No. 17) is denied.

**IT IS RECOMMENDED** that Defendant's motion for summary judgment (Docket No. 13) be granted and that Judgment be entered dismissing this action.

*/s/ Russell A. Eliason*
**United States Magistrate Judge**

July 30, 2008